# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **11-04495-dd**

### ORDER DENYING CONFIRMATION OF CHAPTER 11 PLAN

The relief set forth on the following pages, for a total of 8 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/21/2013**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 02/22/2013

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, | Case No. 11-04495-dd |
| Tommy Ray Hawkins, | Chapter 11 |
| | **ORDER DENYING CONFIRMATION** |
| Debtor. | |

This matter is before the Court for confirmation of the third amended plan of reorganization entered by the debtor, Tommy Ray Hawkins ("Debtor"), on January 9, 2013. Debtor submitted three modifications to the third amended plan. First Reliance Bank ("First Reliance") filed an objection to the second amended plan, which the Court will treat as an objection to the third amended plan.[1] The Court held hearings on January 17, 2013, and February 7, 2013. After careful consideration, the Court finds as follows with respect to the plan before it.

Debtor filed this chapter 11 proceeding on July 18, 2011. He has three loans with First Reliance, which First Reliance asserts are secured by mortgages, timber, and assignment of rents on pieces of real estate located in the following counties in South Carolina: Dorchester, Fairfield, and Berkeley. First Reliance asserts its loans are cross-collateralized by these properties. On March 28, 2012, after no competing bids were received, this Court approved the sale of the Dorchester County property to First Reliance for its credit bid of $1,850,000. According to First Reliance, after applying its credit bid to one of the loans, there remains a balance of $130,504.10 on that loan which is secured by the other two properties. First Reliance initially filed individual proofs of claim for each of its three separate loans. On September 11, 2012, First Reliance

---

[1] First Reliance also filed a competing plan and disclosure statement on December 18, 2012.

1

submitted an amended proof of claim consolidating its three previous claims. This consolidated claim is filed as a secured claim in the amount of $5,103.967.16 as of the date of filing of Debtor's bankruptcy petition and $4,102,510.68 as of October 1, 2012. First Reliance initiated an adversary proceeding on December 18, 2012, to determine the validity, extent, and priority of its liens on the Dorchester, Fairfield, and Berkeley properties.

Debtor's third amended plan places First Reliance's claim into three classes. Class 2 is the secured claim of First Reliance on the Fairfield property, class 3 is the described as the unsecured claims of First Reliance related to the Dorchester property, and class 4 is the secured claim of First Reliance on the Berkeley property. With respect to class 2, the plan states that the claim is impaired, that "the allowed secured claim of First Reliance Bank will be paid as its collateral is sold," and that "interest will accrue at six (6%) per cent per annum." The plan provides that class 3 is unimpaired and that "the allowed secured claim of First Reliance Bank will be paid as its collateral is sold." As for class 4, the plan describes the claim as impaired and states that "the allowed secured claim of First Reliance Bank will be paid as its collateral is sold." The plan proposes to pay class 6 unsecured creditors 100% of their allowed claims. Under "means for implementation," the plan sets forth that "Debtor's Plan of Reorganization is based on the orderly liquidation of his real estate assets and the full satisfaction of allowed claims over a period not to exceed thirty-six (36) months from the Effective Date."

In the January 16, 2013 modification of the third amended plan, Debtor indicates that, with Court approval, he has engaged realtors to market and sell the properties in Charleston and Berkeley counties. Debtor also states that he has obtained a proposal to thin and harvest timber on the Fairfield property that will generate proceeds of $40,000 to $70,000 per month and that this agreement has the potential to generate in excess of $2 million by the agreement's

2

termination date on July 1, 2014. Debtor proposes to place funds generated by the trimming and harvesting of timber alleged to be First Reliance's collateral in an escrow account pending resolution of the adversary proceeding regarding the validity, extent, and priority of First Reliance's lien. Additionally, the January 16th modification states the following regarding marketing of the Fairfield property:

> The Debtor has, during the pendency of this case, actively marketed and considered offers to purchase substantial portions of the Fairfield property. To date, the offers received have not reflected the fair market value of the property, and thus have been rejected. The Debtor is informed and believes that confirmation of his Plan will send the critical message to potential purchasers that First Reliance Bank will not be in a position to foreclose and then sell the Debtor's property at fire sale prices.
> Post Confirmation, the Debtor will continue to actively market the Fairfield property both in bulk and by subdividing the property into saleable tracts. (The Debtor is not opposed to employing professional assistance should that become necessary or advisable.)

The requirements that must be met prior to confirmation of a chapter 11 plan are set forth under 11 U.S.C. § 1129. Because section 1129 indicates that a court "shall" confirm a plan that complies with all of its requirements, if all of those requirements are met, "a court has no discretion with regard to chapter 11 plan confirmation." *In re Gyro-Trac (USA), Inc.*, 441 B.R. 470, 477 (Bankr. D.S.C. 2010). "The Court is required to undertake an independent evaluation of the debtor's plan to determine if it complies with section 1129 even in the absence of an objection by a creditor." *Id.* "The debtor bears the burden of showing that the plan meets the criteria set forth in section 1129, and debtor must satisfy this burden by a preponderance of the evidence." *Id.*

First Reliance asserts that several of the requirements under section 1129(a) are not met in this case. It asserts that the plan lacks feasibility and is not proposed in good faith. *See* 11 U.S.C. § 1129(a)(3), (11). Additionally, First Reliance argues that the plan does not comply with

3

applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1123(a)(5)'s requirement that a plan provide adequate means for implementation. *See* 11 U.S.C. § 1129(a)(1). First Reliance also asserts that the provisions of § 1129(b) are not met.

After careful consideration, the Court finds that Debtor's plan fails to meet the requirements of section 1129(a). More specifically, the Court concludes that Debtor has not met his burden of showing that the plan is feasible, proposed in good faith, and provides adequate means for implementation. Debtor's primary asset for funding the plan and paying his debt to First Reliance is the Fairfield property. In his disclosure statement, Debtor values the timber on the Fairfield property at $3,100,000 and the land at $4,705,900. He values his other property at a total of $1,050,000. Debtor filed his chapter 11 petition in July of 2011. Yet, he does not have a realtor listing the Fairfield property or a marketing plan in place. He neither has a schedule for liquidating the property nor sets forth a time frame for completing tasks related to the liquidation that would allow the Court and creditors to determine whether he is in compliance with the plan. Eighteen months into this case there is not a purchaser in place for all or even part of the property. Debtor suggested at the hearing that he will subdivide the property if he cannot find someone willing to pay an adequate price for the entire tract. However, Debtor does not set forth specifically how he would fund such a subdivision aside from indicating generally that he has assets available to do so. In addition, the proposed plan allows Debtor "virtually unfettered discretion in deciding when and how to market" the Fairfield property and in determining an appropriate price to accept for it. *In re Walker*, 165 B.R. 994, 1002 (Bankr. E.D. Va. 1994). The plan contains no provision regarding how creditors will be paid at the end of the three years if the subject properties are not sold. Given the lack of progress eighteen months into this case, the lack of a marketing plan or professional for the Fairfield property, the lack of a liquidation

4

schedule, and the plan's vesting in Debtor of almost unfettered discretion regarding how to market and what price to accept for the Fairfield property, the Court finds that Debtor's plan does not meet the requirements of section 1129(a).[2] *See Walker*, 165 B.R. at 1001-05 (finding a proposed plan lacked good faith, an adequate means of implementation, and feasibility where the plan "(1) [did] not obligate the debtors to make any payments to secured creditors for a period of four years; (2) [did] not provide a schedule for the liquidation of assets critical to the funding of the plan and consequently to its ability to achieve a result consistent with the requirements of the Bankruptcy Code;  [and] (3) [allowed] the debtors virtually unfettered discretion in deciding when and how to market assets to be sold to provide funding for the plan and in determining the appropriate price to accept for the sale of those assets."); *In re Calvanese*, 169 B.R. 104, 107 (Bankr. E.D. Pa. 1994) ("In the clear majority of cases considering such or similar plans, bankruptcy courts have refused to confirm plans which keep creditors 'on hold' without receipt of payments while the debtor seeks to sell real estate which it has been unable to sell in years past."); *In re Sutton*, 78 B.R. 341, 342 (Bankr. S.D. Fla. 1987) ("Debtor's chapter 11 plan . . . boils down to nothing more than an announced hope that he will sell his stock by February 6, 1988 for enough to satisfy the debt to the corporation, which was fixed by judgment against him 15 months before that date.  He has produced no specific offer of purchase, no specific sale date,

---

[2] Debtor filed a notice and motion for an order authorizing the sale of timber on the Fairfield property free and clear of liens, claims, encumbrances, and other interests on February 6, 2013.  This motion is currently pending and thus the sale had not been approved at the time the Court was considering confirmation of the third amended plan.  Debtor states in the motion that he expects the sale to generate proceeds of between $1,300,000 and $1,400,000 for the estate.  However, the sales agreement attached to the motion indicates that it will generate at most $70,000 per month and will terminate on July 1, 2014.  Assuming the cutting generates $70,000 per month for the months of March 2013 through July 2014, the maximum proceeds realized will be $1,190,000.  Moreover, the agreement lists First Reliance as a seller and contains a signature line for First Reliance, which raises concerns about whether the agreement is enforceable against the buyer if First Reliance does not sign it.

5

and no credible basis to value the stock. He asks this court to hold the corporate creditor at bay another five months from today to see if he can do what he hopes to do, but has failed to do the past ten months."); *In re Love-Seeman Prop.*, 49 B.R. 770, 772 (Bankr. D. Haw. 1985) (finding a plan to be proposed in bad faith where the debtor had received offers sufficient to satisfy his obligations but proposed to take two years to market the property in hopes of obtaining a higher price); *In re Hoffman*, 52 B.R. 212, 215 (Bankr. D.N.D. 1985) (finding a plan not feasible that proposed to satisfy the claim of a creditor through a sale of real estate within a period of two years where there was no assurance the property would sell and no provision for treatment of the creditor's claim if the sale was not completed).

In addition to finding that the plan cannot be confirmed under section 1129(a), the Court concludes it cannot be confirmed applying section 1129(b). As an initial matter, for a plan to be confirmed applying section 1129(b), all of the requirements of section 1129(a) must be met with the exception of paragraph eight. For the reasons set forth above, the Court has concluded the requirements of section 1129(a), paragraphs (1), (3), and (11) have not been met. Therefore, the provisions of section 1129(b) also have not been satisfied. Additionally, paragraph 8 of section 1129(a) provides that each class of claims must accept the plan or not be impaired by the plan. Section 1129(b) states that if a plan complies with all of the applicable requirements of section 1129(a) with the exception of paragraph 8, "the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." With respect to a class of secured claims, the plan must meet one of three conditions in order to be considered fair and equitable. *See* 11 U.S.C. § 1129(b)(2). The first alternative is "that the holders of such claims retain the liens

6

securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims" and "that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property."  11 U.S.C. § 1129(b)(2)(A)(i).  Debtor has not proposed deferred cash payments that meet this requirement. The second alternative is that the plan provides "for the sale . . . of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds" in accordance with section 1129(b)(2)(A)(i) or (iii).  *See* 11 U.S.C. § 1129(b)(2)(A)(ii).  Debtor has not complied with this alternative because he has not proposed a definite sale of the properties securing First Reliance's claim.  The third alternative is that the plan provides for the realization by holders of secured claims of "the indubitable equivalent of such claims."  *See* 11 U.S.C. § 1129(b)(2)(A)(iii). Debtor does not propose meeting this alternative.

For the reasons set forth herein, confirmation of Debtor's third amended plan is denied. Debtor shall have fourteen (14) days from the entry date of this Order to submit a further amended plan.

AND IT IS SO ORDERED.

7